**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| TERRY L. DEAN, | ) |
| | ) |
| Plaintiff, | ) **CIVIL ACTION** |
| | ) |
| v. | ) No. 05-1342-MLB |
| | ) |
| THE BOEING COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This matter comes before the court on defendant's motion for summary judgment. (Doc. 28.)  The motion has been fully briefed and is ripe for decision. (Docs. 29, 32, 33, 36.)  The motion is GRANTED for the reasons stated herein.

**I.  FACTS**

The following facts are uncontroverted or taken in the light most favorable to the non-moving party.  Plaintiff Terry Dean is an African-American male who was employed by The Boeing Company ("Boeing") from September 19, 1986 until January 20, 2004, when he resigned his position.  Dean worked as an aircraft sealant mixer in the master mix area of Boeing.  Critical work for the Boeing facility was performed in the master mix area and as a result, it was important for employees in the area to have regular work attendance.  If one employee in this area was absent, other employees had to carry the missing employee's load.

Approximately ten to sixteen other aircraft sealant mixers worked in the master mix area along with Dean.  Dean's employment was subject to the terms of a collective bargaining agreement between the

International Association of Machinists and Boeing.  Ron Petsche was the manager for the master mix area and for Dean during Dean's last five to six years of his employment with Boeing.  Petsche did not have an office in the master mix area but visited the area a few times a week.

One of Petsche's supervisor responsibilities was to ensure each employee was "clocked" for at least forty hours per week.  If an employee worked a full eight hour shift, he or she would be clocked in Boeing's system for eight hours of regular pay.  If the employee took vacation, the time he or she was on vacation would be clocked to vacation.  If an employee's absence was related to FMLA leave, hours were clocked as excused.  If an employee did not have a valid reason for an absence to be excused, hours were clocked as unexcused.  Under Boeing's policies, an employee could be disciplined for incurring too many unexcused absences in a six month period.

In 2003, Dean did not have a single week in which he worked a full forty hours of regular time.  In 2003, Dean took over 658 hours of leave without pay, 63.5 hours of sick leave, and 43.7 hours of vacation.  Of the 658 hours Dean took without pay in 2003, 480 of those hours were leave under the Family Medical Leave Act ("FMLA"), which is the maximum amount allowed under FMLA per year.  Dean and his co-employee Dana McPherson (an African-American male) had the worst attendance of any of the employees in the master mix area.  Other employees in the master mix area complained to each other and to Petsche about Dean and McPherson's absences.  Despite these complaints, it was recognized by co-employees that Dean and McPherson were the fastest employees in the label room of the master mix area.

-2-

Several of Dean's co-workers believed Petsche had favorites in the master mix area. Dean was not one of Petsche's favorites. Other, non-minority co-workers, were also not favorites of Petsche. Sharon Sprout (a white female co-employee) testified that she was one of Petsche's "non-favorites," along with Dean, McPherson, Martha Stephens (a Native-American female), Terry McBride (a white male), Mark Hoppin (a white male), Chris O'Keitus (a white individual), and a white woman named Susan. Sprout also testified that Petsche had a particular problem with Dean and McPherson, although Dean and McPherson were not similar personalities. Vern Haws, one of Dean's white male co-workers, testified that Petsche's "non-favorites" were Dean, McPherson, McBride, and Phil Dishman (a white male). Haws testified that two co-workers, Stephens and Roger Santee (a white male), made similar mistakes at work and that Stephens was sent to take a drug test but Miller was not.

Petsche never made a racially inappropriate remark to Dean. Petsche did have concerns about Dean's work attendance and was specifically concerned that Dean might be abusing FMLA leave. Petsche had similar concerns regarding McPherson's use of FMLA leave. Petsche sought clarification from Jan McCrary, his contact in the FMLA office at Boeing, in regard to FMLA issues about Dean and McPherson. McCrary felt that Petsche had more questions about Dean and McPherson's use of FMLA because they were the heaviest users of FMLA, not because of Dean and McPherson's race.

In 1998, Dean received a corrective action memorandum ("CAM") for leaving his work area and retrieving something from his car without clocking out. Dean alleges that other, non-minority employees were

-3-

not disciplined for similar conduct, such as leaving early for breaks. Also in 1998, Dean asked to be given as "excused" rather than "vacation" a week off work. Petsche refused the request. Dean alleges Petsche told him he refused his request because he did not want to show favoritism. Earlier that year, however, one of Dean's white male co-employees, Haws, was allowed to take time off as excused rather than vacation. At the time Haws' request was granted, Haws had excellent attendance and production was not busy. The record is replete with other, undated, examples, some controverted, some not, of Petsche disciplining Dean and/or his minority and non-minority co-workers. In some examples, Petsche disciplined Dean but did not discipline similar behavior of non-minority co-workers. There is no question that Dean was a non-favorite of Petsche.

By September 2003, Dean had exceeded his allowed 480 hours of FMLA leave for the year by September. In September 2003, Dean received a CAM for an unexcused absence, which Dean admits was appropriate. Then, after missing several days of work in September and October 2003, Dean provided Petsche with a note from his personal physician reporting that his absence was due to an old work-related injury to his neck. Petsche forwarded the note to the Human Resources department which concluded that because Dean had exhausted his FMLA leave, Boeing policy did not allow Dean to utilize an excuse from his primary care physician but required Dean to see the Boeing authorized workers compensation physician for an excuse. Dean went to the authorized physician with his x-rays, but did not see the physician and left the x-rays with the nurse. Dean alleges the nurse checked with the physician to see if he needed to wait at the office and when

the doctor said all he needed was the x-rays, Dean left.  Because Dean had not actually seen the workers compensation physician, Dean's absences were designated unexcused and he received another CAM for excessive absences (the October CAM).  Boeing's policies require that the employee "see the doctor."

When Dean learned he was receiving the October 2003 CAM, he asked Petsche to clock the absences as vacation so they could be excused. Petsche refused this request because of a provision in the applicable collective bargaining agreement.  The agreement gives discretion to a manager whether to approve absences as vacation when sick leave has been exhausted and states that approval will not be "unreasonably denied" but that the request "will not normally be approved if the employee is then under a Corrective Action Memorandum for attendance." Dean is not aware of any non-minority employee who has been treated more favorably in the same or similar situation.

In November 2003, Dean made a complaint to Boeing's equal employment opportunity office that the October 2003 CAM was discriminatory due to his use of FMLA.  Dean did not frame his complaint as one involving racial discrimination.  Dean's complaint was investigated by a Boeing equal employment opportunity investigator as both a FMLA and race discrimination complaint, and found by Boeing to be baseless.

On January 6 and 7, 2004, Dean was absent from work.  Dean obtained paperwork from Boeing's FMLA office so that he could seek to have the absences treated as FMLA leave.  Boeing's policies required that Dean have the FMLA paperwork initialed by his supervisor within two business days of returning from an absence for which FMLA leave

-5-

was being sought.  On January 20, 2004 Dean was reminded he had been told the previous week that he only had two days to have his FMLA form initialed.  The same day, Dean asked Petsche to initial his paperwork. Petsche told Dean he could not initial the paperwork because of the two day requirement, which the FMLA office at Boeing confirmed for Petsche and Dean.  Dean accepts responsibility, and does not blame Petsche, for missing the two-day requirement with the FMLA paperwork. Dean informed the FMLA office that he was going to request that Petsche clock the time as vacation.  The FMLA office reminded Dean that Petsche did not have to clock the time as vacation because Dean was already under an attendance CAM.  Dean again contacted the FMLA office, stating that he planned to quit before he got fired.  Dean telephoned Petsche and quit his employment at Boeing.  Petsche informed the FMLA office that Dean had done so.  Petsche had not clocked the January 2004 absences by the time Dean quit and no decision had been made regarding whether Dean would be disciplined for the January 2004 absences.

Boeing's attendance policy requires progressive discipline.  The first level is corrective counseling, the second level is a CAM, and the final level is termination.  The policy states that a CAM is not resolved until the employee maintains twelve months of acceptable attendance.  Dean alleges that, in his experience, three CAMs within six months tend to be grounds for termination.

## II.  SUMMARY JUDGMENT STANDARD

The rules applicable to the resolution of this case, now at the summary judgment stage, are well known and are only briefly outlined here.  Federal Rule of Civil Procedure 56© directs the entry of

summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.  An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment.  Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

## III.  ANALYSIS

A.  EXHAUSTION

Boeing first alleges that Dean has not exhausted his administrative remedies relating to his hostile work environment claim and incidents of discrimination occurring prior to August 2003 and therefore this court lacks subject matter jurisdiction over these claims.  (Doc. 29 at 17.)  Dean responds that his claims of retaliation and constructive discharge were exhausted and these claims inherently involve forms of harassment.  Dean also contends that his claims under 42 U.S.C. § 1981 do not require exhaustion.  Dean does not respond to Boeing's allegation that he did not exhaust claims relating to events occurring prior to August 2003.  (Doc. 32 at 16.)

-7-

Federal courts do not have jurisdiction to review Title VII claims not exhausted administratively.  <u>Annett v. Univ. of Kan.</u>, 371 F.3d 1233, 1238 (10th Cir. 2004).  "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter."  <u>Martin v. Cent. States Emblems, Inc.</u>, 150 Fed. Appx. 852, 856 (10th Cir. 2005) (citation omitted).  Therefore, if Dean did not exhaust his administrative remedies with regard to the hostile work environment claim or claims based on conduct occurring before August 2003, this court has no jurisdiction to consider them under Title VII.[1]  It is plaintiff's burden to establish the court's subject matter jurisdiction.  <u>Carter v. Mineta</u>, 125 Fed. Appx. 231, 238 (10th Cir. 2005).

Boeing attaches to its motion for summary judgment Dean's complaint to the Kansas Human Rights Commission ("KHRC"), filed on May 7, 2004.  (Doc. 29 Exh. A, attachment 10.)  In the complaint to the KHRC, Dean asserts race discrimination, retaliation, and constructive discharge.  In his narrative, Dean asserts he "was subjected to disparate terms, conditions, and privileges of employment, due to my race, African American, and was subjected to a reprimand, investigated, and forced to constructively discharge as acts of retaliation for having openly opposed acts and practices forbidden by the Kansas Act Against Discrimination."  These claims, therefore, put forth the substance of a hostile work environment claim.  See <u>Mitchell</u>

_____

[1]   "Unlike Title VII claims, § 1981 claims can be commenced without exhaustion of administrative remedies."  <u>Martin</u>, 150 Fed. Appx. at 857.

-8-

v. City and County of Denver, 112 Fed. Appx. 662 (10th Cir. 2004)(discussing when alleged acts in an administrative complaint can reasonably be read to indicate a hostile work environment claim); see also Carter, 125 Fed. Appx. at 238 (considering a claim exhausted if it is in the "list of claims" set out in the EEOC complaint or if it is "adequately describe[d] in the narrative portion" of an EEOC complaint); Premratananont v. S. Suburban Park & Recreation Dist., No. 97-1090, 1998 WL 211543, at *2 (10th Cir. 1998) (stating that the "typical constructive discharge claim alleges that an employer created a hostile work environment which rendered working conditions intolerable").

Dean's narrative, however, is based only on charges occurring "on or about June 2003, to January 20, 2004." Therefore, any alleged incidents occurring before June 2003 have not been exhausted and may not be considered by this court.

B.  STATUTE OF LIMITATIONS

Boeing next alleges that claims under § 1981 that occurred prior to November 2001 are time-barred by § 1981's statute of limitations and therefore must be dismissed.[2]  (Doc. 29 at 18.)  Dean agrees that § 1981 is subject to a four-year statute of limitations but argues that "[e]vidence of prior discriminatory conduct outside the statute of limitations window may still be introduced and considered as evidence tending to establish discrimination." (Doc. 32 at 17.)

The parties are correct that § 1981, in the context of Dean's

---

[2]  Boeing challenges for failure to exhaust only Dean's § 1981 claims arising before November 2001, i.e., Dean's 1998 denial of a request for leave and Dean's 1999 CAM for misuse of company time claims under Title VII.  Boeing does not challenge them as untimely.

claims, carries a four-year statute of limitations.  Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004).  Dean filed his complaint on November 14, 2005.  (Doc. 1.)  Thus, his claims under § 1981 are untimely unless they accrued on or after November 14, 2001.  "Claims typically accrue, triggering the statute of limitations, when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  Vigil v. City and County of Denver, 162 Fed. Appx. 809, 811 (10th Cir. 2006)(internal citations and quotations omitted).

Dean cites only one case, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), in support of his argument that prior discriminatory acts outside of the limitations period may be considered "as evidence tending to establish discrimination."  (Doc. 32 at 17.)  Morgan was a Title VII case and discussed using prior acts only for the sake of "background evidence," not as separate acts of discrimination as Dean seeks to do.  536 U.S. at 113.  In addition, the Tenth Circuit has previously determined that equitable doctrines utilized in Title VII actions are not appropriate for § 1981.  Amro v. Boeing Co., No. 97-3049, 1998 WL 380510, at *2 n.4 (10th Cir. 1998)("Plaintiff may not avoid the statute of limitations [governing § 1981] by employing the continuing violations doctrine because the doctrine is not available to a plaintiff who brings a § 1981 claim." (citing Thomas v. Denny's, Inc., 111 F.3d 1506, 1513-14 (10th Cir. 1997))).  Therefore, Dean's § 1981 claims for conduct that occurred prior to November 14, 2001 may not be considered by this court.

As a result of the court's analysis of exhaustion under Title VII and the § 1981 statute of limitations, Dean's claims relating to

incidents in 1998/1999 will not be considered and Boeing's motion on these topics in GRANTED.

C.  DISPARATE TREATMENT RACE DISCRIMINATION

Dean's first substantive claim is for disparate treatment race discrimination in violation of Title VII (42 U.S.C. 2000e-2(a)), the Kansas Acts Against Discrimination ("KAAD") (44-1009(a)(1)), and § 1981.[3]  Boeing asserts that Dean's claims of disparate treatment fail as a matter of law because Dean cannot show an adverse employment action, that he was treated differently from non-minority co-workers, or that Boeing's stated reasons for his treatment were pretext for unlawful discrimination.  (Doc. 29 at 18-24.)

---

[3]  "'[I]n racial discrimination suits, the elements of a plaintiff's case are the same . . . whether that case is brought under §§ 1981 or 1983 or Title VII.'  <u>Drake v. Ft. Collins</u>, 927 F.2d 1156, 1162 (10th Cir. 1991); <u>see also</u> <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 186-87, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989)(applying <u>McDonnell Douglas</u> framework to § 1981 suit); <u>Kendrick v. Penske Transp. Servs.</u>, 220 F.3d 1220, 1226 n.4 (10th Cir. 2000)('A plaintiff who alleges discriminatory discharge on the basis of race pursuant to Title VII, 42 U.S.C. § 1983, or § 1981 would have to establish the same elements in order to make out a prima facie case under the <u>McDonnell Douglas</u> burden-shifting analysis.')."  <u>Baca v. Sklar</u>, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005).

In addition, "[p]laintiff has asserted identical claims of race discrimination under both Title VII and the Kansas Act Against Discrimination (KAAD).  Although not controlling, federal decisions applying Title VII are persuasive authority in construing KAAD claims because the statutes are analogous.  <u>See</u> <u>Best v. State Farm Mut. Auto Ins. Co.</u>, 953 F.2d 1477, 1479 (10th Cir. 1991); <u>Woods v. Midwest Conveyor Co., Inc.</u>, 231 Kan. 763, 648 P.2d 234 (1982) (Title VII persuasive authority when interpreting comparable provisions under the KAAD).  Neither party suggests that a different analysis is required under the Kansas statute.  Therefore, the court will apply Title VII standards in deciding defendant's summary judgment motion on plaintiff's KAAD claim."  <u>Richardson v. Topeka Metro. Transit Auth.</u>, 987 F. Supp. 887, 890 (D. Kan. 1997).  <u>See also</u> <u>Aramburu v. Boeing Co.</u>, 112 F.3d 1398, 1403 n.3 (10th Cir. 1997).

Therefore, the court will utilize Title VII standards when analyzing Dean's claims and no distinction will be made between his Title VII claims, his § 1981 claims, or his KAAD claims.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e(16), prohibits an employer from discriminating based on race in the terms and conditions of employment.  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of disparate treatment in violation of Title VII in the circumstances of this case, Dean is required to show: 1) he is a member of a protected class; 2) he was subjected to an adverse employment action; and 3) employees who were not members of the protected class were treated more favorably.  <u>Dunlap v. Kan. Dep't of Health and Env't</u>, 127 Fed. Appx. 433, 437 (10th Cir. 2005).  If Dean establishes a prima facie case, the burden shifts to Boeing to articulate a legitimate nondiscriminatory reason for the adverse action.  If Boeing does so, the burden shifts back to Dean to show that the Boeing's reasons are pretextual.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973); <u>Mickelson v. New York Life Ins., Co.</u>, 460 F.3d 1304, 1316 (10th Cir. 2006).  Therefore, only if Dean shows there is reason to believe the employer's reasons are pretextual should Boeing's motion for summary judgment fail and the case be submitted to the jury.  There is no dispute that Dean is an African-American male and is a member of a protected class but the parties are not in agreement regarding the other two elements of a prima facie showing.

1.  Adverse Employment Action

For a Title VII case, there must be an adverse employment action.  <u>Hillig v. Rumsfeld</u>, 381 F.3d 1028, 1033 (10th Cir. 2004).  The Tenth Circuit has "a liberal standard as to what constitutes an adverse employment action."  <u>Dunlap</u>, 127 Fed. Appx. at 437.  A "mere inconvenience or an alteration of job responsibilities" is not

sufficient to be considered an adverse employment action. <u>Sanchez v. Denver Pub. Schs.</u>, 164 F.3d 527, 532 (10th Cir. 1998). Rather, "the employer's conduct must be materially adverse to the employee's job status," which means the conduct must be "a significant change in employment status, such as . . . firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Wells v. Colo. Dep't of Transp.</u>, 325 F.3d 1205, 1213 (10th Cir. 2003). The finding of an adverse employment action "is determined on a case by case basis." <u>Id.</u> at 1212-13.

Dean's response to Boeing's motion for summary judgment discusses only the following adverse employment actions: 1) his "CAM's about attendance[4]" and 2) "Petsche's refusal to clock Dean's January 2004 absences to vacation." (Doc. 32 at 17-19.) Dean asserts in his affidavit supporting his response to Boeing's motion for summary judgment the following: "Based on my over 17 years at Boeing, my understanding and experience were that the more CAMs an employee had in a six-month period, the greater the risk of negative consequences like demotion or termination. Three CAMs in a six month period usually resulted in serious consequences." (Doc. 32, Exh. 3.) The "Attendance Standards," also attached to Dean's response, defines Boeing's progressive discipline scheme which includes corrective counseling, a written corrective action memo, and termination. The standards also state: "Written Corrective Action Memos will be

---

[4] This is apparently in reference to Dean's October 2003 CAM, as this is the only CAM reference in the pretrial order under disparate treatment race discrimination. Dean admits his September 2003 CAM was appropriate.

-13-

considered resolved when an employee maintains 12 months of acceptable attendance. . . ." (Doc. 32 Exh. 2.)  In addition, Boeing admits that under its policies, an employee could be disciplined for incurring too many unexcused absences in a six-month period.

In consideration of the above Boeing standards, Dean's October 2003 CAM was an adverse employment action.  The CAM was not just a warning, it was the second step in a three-step progressive discipline plan that could end in termination.  See Haynes v. Level 3 Commc'ns, 456 F.3d 1215, 1224-25 (10th Cir. 2006) (stating that a "written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status" such as, for example, when "the effect on the plaintiff's employment status was an immediate placement in an at-risk status").  The CAM was more than a mere inconvenience, it was "materially adverse to [Dean's] job status."  Wells, 325 F.3d at 1213.

The January 2004 refusal to clock absences as vacation does not rise to the same level.  Dean argues that the refusal to clock hours as vacation time amounts to a "disparate application of benefits." (Doc. 32 at 19.)  However, Dean has not alleged that Petsche's refusal was disparate.  The record shows that the clocking of unexcused hours as vacation was to be determined in the discretion of a manager and generally was not done when the employee was under an attendance CAM. The record is void of any allegation that Petsche used this discretion during the relevant time frame in a disparate manner.  In addition, the refusal appears to be more akin to the type of "inconvenience" routinely held by the Tenth Circuit to not constitute an adverse employment action.  See Haynes, 456 F.3d at 1215 ("Only acts that

-14-

constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action." (internal citations and quotations omitted)).  Therefore, only Dean's first contention, the October 2003 CAM, even arguably suffices as an adverse employment action.  It will be considered only to determine if the other elements in a prima facie case of disparate treatment can be satisfied by Dean.

> 2.  Boeing's Treatment of Dean Versus Boeing's Treatment of Similarly Situated Non-Minority Workers

To establish a prima facie case of disparate treatment, Dean must next show that employees who were not members of the defined protected class were treated more favorably than he was by Boeing. In this regard, Dean's evidence and arguments are wholly unpersuasive. His evidence consists of testimony of white co-workers who observed Petsche interact with Dean and McPherson (the other African-American male in Dean's department) who opine that Petsche's actions over the course of his supervision of Dean "may" have been motivated by race.

It is undisputed that Dean and McPherson were two of many of Petsche's non-favorites, but this is irrelevant.  Dean never argues that he was treated differently than other co-workers when he received the November 2003 CAM.  To the contrary, Dean expressly admits that he is not aware of any non-minority employee who failed to see a Boeing authorized workers compensation physician but still had the absence excused as a work-related accident.  Dean also expressly admits that he is not aware of any non-minority employee who was

-15-

allowed to have an absence clocked as excused vacation time when the employee was under an attendance CAM.  Dean subjectively believes that Petsche's treatment of him was because of his race, but this subjective belief is irrelevant.  <u>Aramburu v. Boeing Co.</u>, 112 F.3d 1398, 1408 n.7 (10th Cir. 1997)("[S]ubjective belief of discrimination is not sufficient to preclude summary judgment.").

Therefore, Dean has failed to establish a prima facie case of disparate treatment.  He has not shown he was treated differently than his non-minority co-workers.  Even if he had made this showing, however, it is quite clear that Boeing has proffered a sufficient explanation for its treatment of Dean.  Boeing's policies, procedures, and collective bargaining agreements, none of which Dean has adequately controverted, clearly approve the treatment of Dean  in October 2003 by Petsche.  Dean attempts to show Boeing's explanation is pretextual by continuously pointing to Petsche's apparent dislike of Dean.  However, the record is clear that Petsche apparently disliked many of his employees and Dean was not the only non-favorite. Many of his co-workers were treated with a watchful eye and were not allowed to get away with things other employees may have been allowed to get away with.  This does not change the fact, however, that Dean's October 2003 CAM was wholly in line with Boeing procedures and a legitimate, even-handedly applied, disciplinary action.  Boeing's motion for summary judgment on Dean's disparate treatment claim is GRANTED.

D.   RETALIATION

Dean's second substantive claim is for retaliation, in violation of Title VII (42 U.S.C. § 2000e-3(a)), the KAAD, and § 1981.  To

-16-

establish a prima facie case of retaliation, Dean must show: 1) he engaged in protected activity; 2) Boeing took a material adverse employment action against him; and 3) there exists a causal connection between Dean's protected activity and the adverse action. Carter v. Mineta, 125 Fed. Appx. 231, 239 (10th Cir. 2005). The parties agree that Dean's complaint to Boeing's EEO office in November 2003 constitutes protected activity. Therefore, to establish his prima facie case, Dean need only show an adverse employment action and a causal connection between Dean's report to Boeing's EEO office and that adverse employment action.

The challenged adverse employment action in a retaliation claim is subject to a standard of reasonableness. Burlington N. & Santa Fe Ry. v. White, ___ U.S. ___, 126 S. Ct. 2405 (2006). A challenged employment action is adverse for the purposes of a claim for retaliation under Title VII if "a reasonable employee would have found [it] materially adverse." Mickelson v. New York Life Ins. Co., 460 F.3d 1304, 1315 (10th Cir. 2006). The Supreme Court recently stated in Burlington N. & Santa Fe Ry. v. White that an employer's action is adverse under Title VII if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 126 S. Ct. at 2415 (internal quotation omitted). The materiality of a claimed adverse action is to be determined objectively, based on a reasonable worker. Id. The "prospect of losing wages, benefits, and ultimately a job" would dissuade a reasonable worker from supporting a charge of discrimination. Mickelson, 460 F.3d at 1316. The issuing of written reprimands when those reprimands make it more likely that the complaining employee could be fired is sufficient to find an

-17-

adverse action.  Roberts v. Roadway Express, 149 F.3d 1098, 1104 (10 th Cir. 1998).

To establish an adverse employment action for his retaliation claim, Dean argues that he was "disciplined for missing two days of work in January of 2004, after they were not approved as FMLA and Ron Petsche refused to clock them as vacation."  (Doc. 27 at 11.)  Once again, Dean's allegation of an adverse employment action fails to rise to the level necessary to make out a prima facie case.  The record does not show that Dean was "disciplined" in January 2004.  The record shows only that Dean was told by Boeing's FMLA office that Petsche did not have to clock the time as vacation because Dean was already under an attendance CAM.  Dean then contacted the FMLA office and stated that he planned to quit before he got fired.  Dean next telephoned Petsche and quit his employment at Boeing.  Petsche had not clocked the January 2004 absences by the time Dean quit and no decision had been made regarding whether Dean would be disciplined for the January 2004 absences.  A reasonable, objective worker could not find the foregoing series of events to be retaliatory in any way.

In addition, even assuming Dean had shown an adverse employment action, and the court inferred causation, see McGowan v. City of Eufala, ___ F.3d ___, 2006 WL 3720238, at *6 (10th Cir. 2006)("the required link between the protected activity and subsequent adverse employment action can be inferred if the action occurs with a short period of time after the protected activity."), Boeing has again offered a legitimate nondiscriminatory reason for its actions.  Boeing treated Dean in accordance with its established collective bargaining agreement which authorized a manager to refuse to clock as vacation

-18-

unexcused absences when an employee is under an attendance CAM. Boeing's motion for summary judgment on Dean's retaliation claim is GRANTED.

E.  HOSTILE WORK ENVIRONMENT

Dean's third substantive claim is based on a hostile work environment, in violation of Title VII, the KAAD, and § 1981.  In evaluating a claim based on a hostile work environment, a court must inquire whether "the workplace is permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations and alterations omitted). The alleged harassment must be based on a protected characteristic, such as race. See Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994) ("General harassment if not racial or sexual is not actionable.").

A plaintiff can show that harassment is severe or pervasive enough to implicate Title VII if he satisfies a two-part test. Specifically, Dean must show 1) the conduct "create[d] an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive" and 2) he "subjectively perceive[d] the environment to be abusive." Harris, 510 U.S. at 21. "[D]etermining whether an actionable hostile work environment claim exists" requires an examination of "all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's

-19-

work performance." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.
101, 116 (2002) (quotations omitted). Accordingly, to survive summary
judgment, Dean is required to present sufficient evidence from which
a reasonable jury could find that Boeing's conduct created both an
objectively and subjectively racially hostile work environment. See
Davis v. U.S. Postal Serv., 142 F.3d 1334, 1341 (10th Cir. 1998).

No reasonable jury could find from the relevant evidence that
Dean's workplace was "permeated with discriminatory intimidation,
ridicule, and insult . . . sufficiently severe or pervasive to alter
the conditions of his employment" in regards to Dean's race. Penry
v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257, 1261 (10th Cir.
1998). Dean alleged no incidents of overtly racial discrimination and
only two incidents of race-neutral conduct during the last six months
of his employment at Boeing (the only relevant time frame, from August
2003 to January 2004). Far more would be required in order to survive
Boeing's motion for summary judgment. See Bolden v. PRC Inc., 43 F.3d
545 (10th Cir. 1995) (affirming grant of summary judgment for the
employer on allegations of two incidents of overtly racial
discrimination and twenty incidents race-neutral conduct during the
employees last eighteen months of employment); Hicks v. Gates Rubber
Co., 928 F.2d 966 (10th Cir. 1991) (affirming trial court's ruling for
the employer on allegations of nine incidents of harassment over a
period of eight months).

The problem with Dean's response to Boeing's motion for summary
judgment is that it fails to create a genuine issue of material fact
regarding whether Petsche's harassment of his employees was racially
motivated. It is quite plausible that an employer, through the

conduct of one of its managers, might create conditions in which all of its employees, without regard for race, reasonably feel harassed, and yet the employer would not be liable under Title VII based on a hostile work environment because the manager did not discriminate on the basis of race.  Title VII does not require employers and employees to associate in harmony.  When an employee claims race discrimination predicated on racially neutral conduct, it is necessary for the employee to establish that the employer's motive's for its actions were racial.  Dean has failed to do so and Boeing's motion for summary judgment on Dean's hostile work environment claim in GRANTED.

F.   CONSTRUCTIVE DISCHARGE

Dean's final substantive claim is for constructive discharge, based on a violation of Title VII, the KAAD, and § 1981.  An employee attempting to "establish that a resignation in effect constitutes a constructive discharge for purposes of a Title VII claim must show that the 'employer has deliberately made or allowed the employee's working conditions to become so intolerable that the employee has no other choice but to quit.'"  Vann v. Sw. Bell Tel. Co., 179 Fed. Appx. 491 (10th Cir. 2006)(internal alterations omitted).  "When examining a constructive discharge claim, [the court] disregards both the employee's subjective view of the workplace environment and the employer's subjective intentions regarding the employee."  Baca v. Sklar, 398 F.3d 1210, 1216 (10th Cir. 2005).  "If an employer resigns of [his] own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged."  Jeffries v. State of Kan., 147 F.3d 1220, 1233 (10th Cir. 1998).

-21-

"[C]onduct which meets the definition of 'tangible employment action' or an 'adverse employment action' is not necessarily sufficient to establish a constructive discharge because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable." Tran v. Trs. of State Colls. in Colo., 355 F.3d 1263, 1270 (10th Cir. 2004). For the reasons discussed above, Dean has failed to show even an adverse employment action, let alone a hostile work environment; he certainly has not created a genuine issue of material fact with regard to constructive discharge.

Dean has failed to establish that a reasonable person in his circumstances would have felt compelled to resign. As the Tenth Circuit stated in the constructive discharge context, "[i]t is clear [the plaintiff employee] was unhappy during her final days [with the employer] as a result of what [the employee] perceived to be unequal treatment. . . . However, not every unhappy employee has an actionable claim of constructive discharge pursuant to Title VII." Block v. Kwal-Howells, Inc., 92 Fed. Appx. 657, 662 (10th Cir. 2004)(internal citations and quotations omitted).

Dean has failed to raise a genuine issue of material fact in regard to his ability to establish a prima facie case. Therefore, Boeing is entitled to judgment as a matter of law on the issue of constructive discharge and its motion for summary judgment on Dean's constructive discharge claim is GRANTED.

**IV.  CONCLUSION**

Boeing's motion for summary judgment is GRANTED. The clerk is ordered to enter judgment pursuant to Federal Rule of Civil Procedure

-22-

58.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed five pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed five pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this   25th   day of January, 2007, at Wichita, Kansas.

S/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-23-